UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

SHARZAD SEFATI,

                          Plaintiff,

        v.

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

                          Defendant.

NO.  C13-493-RSM-JPD

REPORT AND
RECOMMENDATION

Plaintiff Sharzad Safati appeals the final decision of the Commissioner of the Social

Security Administration ("Commissioner") which denied her applications for Disability

Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-33,

after a hearing before an administrative law judge ("ALJ").  For the reasons set forth below,

the Court recommends that the Commissioner's decision be AFFIRMED.

## I.        FACTS AND PROCEDURAL HISTORY

At the time of the administrative hearing, plaintiff was a fifty-three year old woman

with a college education.  Administrative Record ("AR") at 41.  Her past work experience

includes employment as a beautician.  AR at 42.  Plaintiff was last gainfully employed in 2005,

when she closed her business.  AR at 42, 200.

REPORT AND RECOMMENDATION - 1

On January 11, 2011, plaintiff filed an application for DIB, alleging an onset date of January 22, 2009.  AR at 176, 187.[1]  Plaintiff's date last insured is December 31, 2009.  AR at 16.  Plaintiff asserts that she is disabled due to back and hip pain from arthritis, bilateral carpal tunnel syndrome, headaches, gastrointestinal impairment of undetermined etiology causing abdominal pain and rectal bleeding, post-traumatic stress disorder ("PTSD"), depression, and anxiety with panic attacks.  AR at 19, 47-58.

The Commissioner denied plaintiff's claim initially and on reconsideration.  AR at 90, 101.  Plaintiff requested a hearing, which took place on January 23, 2012.  AR at 34-68.  On February 24, 2012, the ALJ issued a decision finding plaintiff not disabled and denied benefits based on his finding that plaintiff could perform a specific job existing in significant numbers in the national economy.  AR at 13-33.  Plaintiff's requested review of the ALJ's unfavorable decision by the Appeals Council, and submitted additional records from health providers documenting ongoing treatment.  AR at 2.  The Appeals Council denied the request for review on January 22, 2013, making the ALJ's ruling the "final decision" of the Commissioner as that term is defined by 42 U.S.C. § 405(g).  On March 20, 2013, plaintiff timely filed the present action challenging the Commissioner's decision.  Dkt.  3.

## II.   JURISDICTION

Jurisdiction to review the Commissioner's decision exists pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

---

[1] Plaintiff notes that "it appears the SSA subsequently assigned a potential onset date (POD) of January 1, 2006, based on claimant's report that she has not worked since closing her business in 2005 . . . but that is not the date Plaintiff actually alleged disability from in her application."  Dkt. 14 at 2 n.1 (citing AR at 176, 200).

REPORT AND RECOMMENDATION - 2

III.    STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole.  *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005).  "Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989).  The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist.  *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).  While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner.  *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).  When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld.  *Id.*

The Court may direct an award of benefits where "the record has been fully developed and further administrative proceedings would serve no useful purpose."  *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002) (citing *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996)).  The Court may find that this occurs when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting the claimant's evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled if he considered the claimant's evidence.

*Id.* at 1076-77; *see also Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000) (noting that erroneously rejected evidence may be credited when all three elements are met).

REPORT AND RECOMMENDATION - 3

IV.     EVALUATING DISABILITY

As the claimant, Ms. Sefati bears the burden of proving that she is disabled within the meaning of the Social Security Act (the "Act").  *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (internal citations omitted).  The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment which has lasted, or is expected to last, for a continuous period of not less than twelve months.  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  A claimant is disabled under the Act only if her impairments are of such severity that she is unable to do her previous work, and cannot, considering her age, education, and work experience, engage in any other substantial gainful activity existing in the national economy.  42 U.S.C. §§ 423(d)(2)(A); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

The Commissioner has established a five step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Act.  *See* 20 C.F.R. §§ 404.1520, 416.920.  The claimant bears the burden of proof during steps one through four.  At step five, the burden shifts to the Commissioner.  *Id.*  If a claimant is found to be disabled at any step in the sequence, the inquiry ends without the need to consider subsequent steps.  Step one asks whether the claimant is presently engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(b), 416.920(b).[2]  If she is, disability benefits are denied.  If she is not, the Commissioner proceeds to step two.  At step two, the claimant must establish that she has one or more medically severe impairments, or combination of impairments, that limit her physical or mental ability to do basic work activities.  If the claimant does not have such impairments,

---

[2] Substantial gainful activity is work activity that is both substantial, i.e., involves significant physical and/or mental activities, and gainful, i.e., performed for profit.  20 C.F.R. § 404.1572.

she is not disabled.  20 C.F.R. §§ 404.1520(c), 416.920(c).  If the claimant does have a severe impairment, the Commissioner moves to step three to determine whether the impairment meets or equals any of the listed impairments described in the regulations.  20 C.F.R. §§ 404.1520(d), 416.920(d).  A claimant whose impairment meets or equals one of the listings for the required twelve-month duration requirement is disabled.  *Id.*

When the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, the Commissioner must proceed to step four and evaluate the claimant's residual functional capacity ("RFC").  20 C.F.R. §§ 404.1520(e), 416.920(e).  Here, the Commissioner evaluates the physical and mental demands of the claimant's past relevant work to determine whether she can still perform that work.  20 C.F.R. §§ 404.1520(f), 416.920(f).  If the claimant is able to perform her past relevant work, she is not disabled; if the opposite is true, then the burden shifts to the Commissioner at step five to show that the claimant can perform other work that exists in significant numbers in the national economy, taking into consideration the claimant's RFC, age, education, and work experience.  20 C.F.R. §§ 404.1520(g), 416.920(g); *Tackett*, 180 F.3d at 1099, 1100.  If the Commissioner finds the claimant is unable to perform other work, then the claimant is found disabled and benefits may be awarded.

V.     DECISION BELOW

On February 24, 2012, the ALJ issued a decision finding the following:

1.     The claimant last met the insured status requirements of the Social Security Act on December 31, 2009.

2.     The claimant did not engaged in substantial gainful activity during the period from her alleged onset date of January 1, 2006 through the date last insured of December 31, 2009.

3.     Through the date last insured, the claimant did not have any severe impairments.

REPORT AND RECOMMENDATION - 5

4.      In the alternative, the claimant had the following severe impairments through the date last insured: post traumatic stress disorder (PTSD); anxiety disorder; dysthymia; osteoarthritis of the hips and low back; carpal tunnel syndrome in the right upper extremity; headaches of unclear etiology.

5.      In the alternative, through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

6.      After careful consideration of the entire record, the undersigned finds in the alternative that, through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except that the claimant was limited to frequent reaching, handling, and feeling with the right upper extremity, which is her dominant upper extremity.  She was limited to tasks that could be learned in 1 year or less.  She was able to adapt to a predictable work routine..

7.      In the alternative, through the date last insured, the claimant was capable of performing past relevant work as a beautician.  This work did not require the performance of work-related activities precluded by

8.      The claimant was not under a disability, as defined in the Social Security Act, at any time from January 1, 2006, the alleged onset date, through December 31, 2009, the date last insured.

AR at 18-29.

## VI.      ISSUES ON APPEAL

The principal issues on appeal are:

1.      Considering all of the evidence in the record, including new evidence, is the ALJ's step two finding that plaintiff did not have a medically determinable impairment supported by substantial evidence?

2.      Was the certified Administrative Record complete without post-decision evidence not exhibited in the record?

3.      Did the ALJ err in assessing plaintiff's credibility?

Dkt. 14 at 1; Dkt. 16 at 2.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

VII.    DISCUSSION

A.    The ALJ's Step Two Finding was Supported by Substantial Evidence

1.    *The ALJ's Step Two Findings*

At step two, the ALJ found that plaintiff had no severe impairments prior to her date last insured of December 31, 2009.  AR at 18.  Specifically, the ALJ asserted that "the medical record reflects little evidence from the period prior to the date last insured of December 31, 2009."  AR at 18.  Although a "January 2009 letter indicates that laboratory testing showed blood in stool, and colonoscopy was recommended . . . the record from the period prior to the date last insured does not reflect a diagnosis related to this laboratory finding, or consistent complaints related to a history of blood in stool.  As discussed below, there is no evidence of follow-up colonoscopy in the medical record."  AR at 18.  Thus, the ALJ concluded that "there is no objective medical or other evidence to show that these impairments caused more than minimal vocational limitations for a continuous period of at least 12 months through the date last insured.  Accordingly, the undersigned finds that the claimant had no severe impairments through the date last insured."  AR at 19.

Although the ALJ found plaintiff was not disabled at step two, the ALJ continued the sequential evaluation process by making alternate findings "out of an abundance of caution."  AR at 19.  In the alternative, the ALJ found that plaintiff had the following severe impairments through the date last insured: post traumatic stress disorder ("PTSD"), anxiety disorder, dysthymia, osteoarthritis of the hips and low back, carpal tunnel syndrome in the right upper extremity, and headaches of unclear etiology.  AR at 19.  The ALJ reiterated that plaintiff's gastrointestinal problems were not severe, for the reasons discussed above.

1

2.    *Parties' Contentions*

2          Plaintiff contends that "the gastrointestinal impairment with resultant abdominal pain

3   and rectal bleeding is at issue in this case, and the ALJ's failure to properly consider it severe

4   harmed Plaintiff." Dkt. 14 at 5.  Specifically, plaintiff asserts that the ALJ erred by finding

5   that plaintiff could not have any severe impairments prior to her date last insured because

6   plaintiff did not obtain a diagnosis before her date last insured, and the record lacked objective

7   evidence that the impairment lasted for at least twelve months "through the date last insured."

8   Dkt. 14 at 5.  Plaintiff asserts that "the *diagnosis* of an impairment does not need to be made

9   before the date last insured in order for the impairment to have existed and been medically

10  determinable and severe prior to the date last insured." *Id*.  Plaintiff argues pursuant to SSR

11  83-20, "an ALJ is not permitted to rely on the first date of diagnosis simply because no earlier

12  diagnosis date is available.  Rather than ALJ must obtain medical and non-medical evidence to

13  establish the onset of a claimant's disability, and determine from the medical and other

14  evidence (such as testimony) . . . when a claimant's impairments became so severe as to be

15  disabling." *Id*.  Plaintiff argues that when an onset date must be inferred, an ALJ "must,"

16  instead of "should," call on a medical advisor to resolve the onset date issue. *Id*. at 6 (citing

17  *DeLorme v. Sullivan*, 924 F.2d 841, 848 (9th Cir. 1991)).

18          With respect to the ALJ's alternative step two findings, plaintiff argues that the ALJ

19  erred by finding that plaintiff's failure to obtain a colonoscopy, and her denial of

20  gastrointestinal complaints in a January 2011 examination, showed that her gastrointestinal

21  complaints continued to be non-severe. *Id*. at 7 (citing AR at 19, 255, 278).  Plaintiff asserts

22  that she provided documentation of her gastrointestinal problems, as she tested positive for

23  blood in her stool in December 2008 and reported that she was experiencing rectal bleeding 3-

24  4 days out of the week. *Id.* (citing AR at 246).  In January 2009, plaintiff was referred from

REPORT AND RECOMMENDATION - 8

Planned Parenthood to the Interfaith Community Health Clinic, due to blood in her stool. *Id*. (citing AR at 266). She was also referred for a colonoscopy and made an appointment, but could not afford the cost as she had no health insurance. *Id*. at 8-9 (citing AR at 262, 266). Plaintiff asserts that she was diagnosed with abdominal pain, generalized, recurrent and bilateral leg pain, AR at 269, and subsequent records show stomach pain with cramps associated with the rectal bleeding. AR at 259. Notes from 2010 show that she continued to have blood in her stool a few times per week and intermittent abdominal pain, and that these symptoms were "not new." AR at 255. Plaintiff asserts that "it is true that she had been referred for colonoscopy several times, as noted in multiple records through 2011, she was unable to follow through on these referrals due to the cost and lack of insurance." *Id*. at 9 (citing AR at 194-95, 255, 246, 262, 266). However, "the ALJ's reasoning that Plaintiff's failure to follow through with a colonoscopy leads to a conclusion that the impairment is non-severe is erroneous and contrary to law." *Id*. at 10 (citing 20 C.F.R. § 404.1530).

Finally, plaintiff asserts that "it was not until July 2012, some five months after the ALJ's denial, at a point when Plaintiff had obtained state assistance that she was able to undergo a colonoscopy, which detected a large sigmoid polyp on her colon, which was removed surgically." *Id*. at 12 (citing Dkt. 14, Exs. 1-2). Plaintiff asserts that the subsequent medical records "finally document the etiology of the abdominal pain and rectal bleeding and give Plaintiff a diagnosis for the impairment which she suffered from since 2008. Even though the colonoscopy and polyp resection was after the expiration of Plaintiff's [date last insured], it remains relevant evidence." *Id*. at 12-13.

The Commissioner responds that "regardless of how many symptoms an individual alleges, or how genuine the individual's complaints may appear to be, the existence of a medically determinable physical or mental impairment cannot be established in the absence of

objective medical abnormalities; i.e., medical signs and laboratory findings." Dkt. 16 at 11-12 (quoting *Ukolov v. Varnhart*, 420 F.3d 1002, 1005 (9th Cir. 2005) (quoting SSR 96-4p)). In addition, "a diagnosis from an acceptable medical source is necessary to establish the existence of a medically determinable impairment." *Id*. at 12 (citing 20 C.F.R. §§ 404.1513(a)). "If there is no medically determinable physical or mental impairment(s) . . . the symptoms cannot be found to affect the individual's ability to do basic work activities." *Id*. (citing SSR 96-7p). Thus, "in addition to proving she had a medically determinable impairment, Plaintiff had the burden of proving she had a severe impairment or combination or impairments that lasted or was expected to last for twelve months." *Id*. (citing 20 C.F.R. §§ 404.1505(a)).

The Commissioner argues that the ALJ did not err by finding that there was no evidence in the record that plaintiff had any severe physical or mental impairments before the date last insured. *Id*. at 13 (citing AR at 18). Contrary to plaintiff's argument that the ALJ failed to fully develop the record, the Commissioner argues that "it is only where the available information is ambiguous or insufficient to make a determination that additional information is necessary under the regulations." 20 C.F.R. § 404.1512(e). "Here, the ALJ had sufficient information to support his determination that Plaintiff failed to establish disability. Therefore he was not required to further develop the record." Dkt. 16 at 13. Similarly, the Commissioner asserts that the ALJ was not required to ask a medical expert to infer an onset date, as SSR 83-20's policy for establishing the onset date of disability "only applies when a claimant has already established the existence of a medically determinable impairment and, therefore, it is necessary to determine when that impairment reached a disabling level of severity." *Id*. at 14. Because the plaintiff did not meet her burden of showing that she was disabled by a medically determinable impairment prior to her date last insured, there was no

1   requirement for the ALJ to infer a disability onset date for an alleged disability that had not

2   been established.  *Id*. at 14-15.

3            3.      *Legal Standards for Step Two*

4            At step two, a claimant must make a threshold showing that her medically determinable

5   impairments significantly limit her ability to perform basic work activities.  *See Bowen v.*

6   *Yuckert*, 482 U.S. 137, 145 (1987) and 20 C.F.R. §§ 404.1520(c), 416.920(c).  "Basic work

7   activities" refers to "the abilities and aptitudes necessary to do most jobs."  20 C.F.R. §§

8   404.1521(b), 416.921(b).  "An impairment or combination of impairments can be found 'not

9   severe' only if the evidence establishes a slight abnormality that has 'no more than a minimal

10  effect on an individual's ability to work.'"  *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir.

11  1996 (quoting SSR 85-28)).  "[T]he step two inquiry is a de minimis screening device to

12  dispose of groundless claims."  *Id*. (citing *Bowen*, 482 U.S. at 153-54).  A diagnosis alone is

13  not sufficient to establish a severe impairment.  Instead, a claimant must show that his

14  medically determinable impairments are severe.  20 C.F.R. §§ 404.1520(c), 416.920(c).

15          At step two, a mental or physical impairment must result from anatomical,

16  physiological, or psychological abnormalities which can be shown by medically acceptable

17  clinical and laboratory diagnostic techniques, and established by medical evidence consisting

18  of signs, symptoms, and laboratory findings, not only by the claimant's statement of

19  symptoms.  20 C.F.R. §§ 404.1508, 416.908.  "Symptoms" are the claimant's own description

20  of his or her physical or mental impairment.  *Id.* at 404.1528(a), 414.928(a).  "Signs" are

21  "anatomical, physiological, or psychological abnormalities which can be observed, apart from

22  the claimant's statements (symptoms)."  *Id.* at 404.1528(b), 414.928(b).  "Signs must be shown

23  by medically acceptable clinical diagnostic techniques."  *Id*.  "Laboratory findings" are

24  "anatomical, physiological, or psychological phenomena which can be shown by the use of

REPORT AND RECOMMENDATION - 11

medically acceptable laboratory diagnostic techniques." *Id*. at 404.1528(c), 414.928(c).  Thus,

a symptom or combination of symptoms cannot establish a medically determinable physical or

mental impairment "unless there are medical signs and laboratory findings demonstrating the

existence of a medically determinable physical or mental impairment."  SSR 96-4p.  *See also*

*Ukolov v. Barnhart*, 420 F.3d 1002, 1005-06 (9th Cir. 2005) (noting SSR 96-6p "provides that

a medical opinion offered in support of an impairment must include 'symptoms [and a]

*diagnosis*.'") (emphasis in original).

### 4.   *The ALJ Did Not Err at Step Two*

The ALJ provided legally sufficient reasons to support the finding that plaintiff did not

meet her burden of establishing an impairment or combination of impairments that

significantly affected her ability to perform basic work activities for twelve consecutive

months.  It is undisputed that plaintiff has reported the symptom of blood in her stool since

approximately 2008, and the presence of this symptom was confirmed by laboratory testing in

January 2009.  AR at 18, 344.  *See* Dkt. 14, Ex. 2 at 6 ("She reports seeing bright red blood in

her stool since approximately 2008.  She denies any recent changes in her rectal bleeding.").

Specifically, plaintiff was advised by the Mt. Baker Planned Parenthood on January 9, 2009

that laboratory testing confirmed that her "recent stool card samples had blood in them. This

could indicate early colon cancer, precancerous polyps, or another condition.  It is important

that you follow up this test with a colonoscopy to get a better idea of the cause of this

bleeding."  AR at 344.  However, due to her unfortunate financial circumstances, plaintiff

failed to follow up with the many referrals for a colonoscopy until 2012.

In fact, plaintiff did not obtain a diagnosis related to her rectal bleeding until July 2012,

several months after the ALJ issued his decision, after she finally underwent a colonoscopy.

Specifically, on July 23, 2012, plaintiff received a letter from Benjamin Siemanowski, M.D.

REPORT AND RECOMMENDATION - 12

summarizing the results of her colonoscopy performed "due to recent rectal bleeding" on July

18, 2012. Dkt. 14-1 at 8. Dr. Siemanowski advised plaintiff that he noted "1 large polyp in the

bottom portion of your colon. That was removed. Analysis of this polyp showed it to be a

tubulovillous adenoma which is a potentially precancerous polyp. As this polyp was removed

in its entirety, it does not pose further risk." *Id.*[3] *See also* Dkt. 14, Ex. 1 at 54 (pathology

report); Dkt. 14, Ex. 2 at 2 (Siemanowksi letter); Dkt. 14, Ex. 2 at 4 (dictation of colonoscopy

procedure).

　　　　Thus, plaintiff did not establish the existence of an impairment, i.e., "an impairment

that results from anatomical, physiological, or psychological abnormalities which are

demonstrated by medically acceptable clinical and laboratory diagnostic techniques," prior to

her date last insured. In fact, it appears that plaintiff did not obtain the requisite diagnosis from

a physician until July 2012, when Dr. Siemanowski diagnosed her with a precancerous polyp

following a colonoscopy. 42 U.S.C. § 423(d)(3). As argued by the Commissioner, the Social

Security regulations require a diagnosis from an acceptable medical source to establish the

existence of a medically determinable impairment. *See* 20 C.F.R. § 404.1513(a) (providing

that "we need evidence from acceptable medical sources to establish whether you have a

medically determinable impairment," such as from a licensed physician, and that "medical

reports should include . . . [a] diagnosis (statement of disease or injury based on its signs and

symptoms)…"). *See also Ukolov*, 420 F.3d at 1006 (holding that portions of treatment records

purporting to describe "objective" findings, including "weakness in the distal lower

extremities" and a positive Romberg test, did not establish a medically determinable

---

[3] Due to plaintiff's "poor preparation" for the colonoscopy, Dr. Siemanowski recommended a repeat colonoscopy "with a more aggressive preparation in order to fully examine your entire colon." *Id.* The "new evidence" submitted to the Appeals Council, and incorporated into the record before this Court, do not indicate whether plaintiff underwent this repeat colonoscopy.

REPORT AND RECOMMENDATION - 13

1   impairment because the doctor's observations did not include a diagnosis or a finding of

2   impairment).

3       As plaintiff argues, the Ninth Circuit has recognized that a "claimant is eligible for

4   coverage only if the current period of disability extends back continuously to an onset date

5   prior to the expiration of insured status.  The claimant may establish such continuous disabling

6   severity by means of a retrospective diagnosis." *Flaten v. Secretary of Health & Human*

7   *Services*, 44 F.3d 1453, 1461 (9th Cir. 1995).  Specifically, the Ninth Circuit noted in *Flaten*

8   that "in a retrospective diagnosis case, a '[c]laimant is not entitled to disability benefits unless

9   he can demonstrate that his disability existed prior to the expiration of his insured status.'" *Id*.

10  at n.4 (citing *Cruz Rivera v. Secretary of Health & Human Services*, 818 F.2d 96, 97 (1st Cir.

11  1986)).  Similarly, the Ninth Circuit observed in *Smith v. Bowen* that "[w]e think it is clear

12  that reports containing observations made after the period for disability are relevant to assess

13  the claimant's disability.  It is obvious that medical reports are inevitably rendered

14  retrospectively and should not be disregarded solely on that basis." *Smith v. Bowen,* 849 F.2d

15  1222, 1225 (9th Cir. 1988) (internal citations omitted); *accord Lingenfelter v. Astrue,* 504 F.3d

16  1028, 1034 n. 3 (9th Cir. 2007) (same).

17      Even assuming that Dr. Siemanowski's diagnosis of a precancerous polyp following

18  colonoscopy in July 2012 constituted a "retrospective diagnosis" relating to plaintiff's bloody

19  stool prior to her date last insured, however, a diagnosis alone is not sufficient to establish a

20  severe impairment.  A claimant must show that her medically determinable impairments are

21  severe.  20 C.F.R. § 404.1520(c) (providing that a severe impairment is an impairment that

22  significantly limits a claimant's physical or mental ability to do basic work activities).  *See*

23  *Bowen*, 482 U.S. at 141.  The ALJ correctly noted that there were minimal records dated prior

24  to the date last insured.  Prior to plaintiff's July 2012 colonoscopy, the only apparent "medical

REPORT AND RECOMMENDATION - 14

signs" were the January 2009 laboratory test results confirming the presence of blood in

plaintiff's stool.  *See* 20 C.F.R. § 404.1528(b) ("Signs are anatomical, physiological, or

psychological abnormalities which can be observed, apart from your statements

(symptoms).").[4]  Neither the record before the ALJ, nor the supplemented record before the

Appeals Council, show that plaintiff's rectal bleeding significantly limited her ability to do

basic work activities for any period of time, let alone for twelve consecutive months.  *See* 20

C.F.R. § 404.1520(c) ("If you do not have any impairment or combination of impairments

which significantly limits your physical . . . ability to do basic work activities, we will find that

you do not have a severe impairment and are, therefore, not disabled."); 20 C.F.R. §

404.1505(a) (providing that unless expected to result in death, a severe impairment must last

for a continuous period of at least twelve months to be disabling).[5]

Accordingly, although the ALJ did not have the benefit of Dr. Siemanowski's diagnosis

at the time of his written decision, the ALJ's conclusion that plaintiff's symptoms of rectal

bleeding did not establish a severe impairment prior to her date last insured was rational and

supported by substantial evidence.  The ALJ committed no legal error in finding lack of severe

impairment at step two of the sequential process.  *See Ball v. Massanari*, 254 F.3d 817, 823

(9th Cir. 2001) ("If the claimant's ailment does not pass step 2, . . . it is not disabling.").

Finally, as the ALJ had sufficient information to support his determination that plaintiff

failed to establish disability, plaintiff's related arguments that the ALJ was required to expand

---

[4] Subsequent treatment notes from the Interfaith Community Health Center, which were
submitted for the first time to the Appeals Council, also reflect plaintiff's report that she had
been experiencing the symptom of "bloody stools" for "a long time."  Dkt. 14, Ex. 1 at 27.  *See*
Dkt. 14, Ex. 2 at 6 ("She reports seeing bright red blood in her stool since approximately
2008."); Dkt. 14, Ex. 1 at 33, 38 ("Rectal bleeding since at least 1/2011 – hemoccult cards
positive x3 Jan 2009.").

[5] Furthermore, the polyp was removed in its entirety during plaintiff's colonoscopy, and
does not "pose further risk" to the plaintiff's health in the future.

REPORT AND RECOMMENDATION - 15

the record, or call a medical advisor to testify regarding plaintiff's "onset date" at the hearing, are both unpersuasive. *See* 20 C.F.R. § 404.1512(e) (providing that evidence in the record must be "complete and detailed enough" to make a disability determination); *Crane v. Shalala*, 76 F.3d 251, 255 (9th Cir. 1996) (holding that where the ALJ found the claimant not disabled, the ALJ did not need a medical expert to determine the onset date of the alleged disability); *Armstrong v. Comm'r of Soc. Sec. Admin.*, 160 F.3d 587, 589-90 (9th Cir. 1998) (holding that an ALJ must call a medical expert to determine the onset date of a disability under Title II when a claimant has already established a disabling impairment for purposes of Title XVI benefits, and the evidence of disability prior to the date last insured is ambiguous).[6]

B.     The Certified Administrative Record Was Complete

Plaintiff next "assigns error to the Commissioner's failure to provide a complete and accurate transcript." Dkt. 14 at 13. Specifically, plaintiff argues that "in this case, Defendant has failed to provide for judicial review a complete and accurate transcript of the entire record of the proceedings in this case, as required by law," because the Commissioner "failed to include in the Administrative Record presented to the Court and to Plaintiff several medical exhibits submitted to the Appeals Council in support of the Plaintiff's Request for Review of the ALJ's decision." *Id*. at 14. In the notice denying plaintiff's request for review, the Appeals Council acknowledged its receipt and consideration of the medical records at issue, but asserted that the ALJ decided the case "through December 31, 2009, the date [plaintiff was] last insured for disability benefits. This new information is about a later time. Therefore, it

_____

[6] Similarly, plaintiff's argument that "the ALJ's initial step 2 finding that a lack of medical records showing treatment prior to expiration of Plaintiff's [date last insured] in December 2009 leads to a conclusion that Plaintiff had no severe mental impairments prior to that time is contrary to law and not supported by substantial evidence, for similar reasons as discussed in Argument 1" is unconvincing. Dkt. 14 at 18-19. Plaintiff does not show that the ALJ had an obligation to further develop the record with respect to plaintiff's alleged mental impairments.

REPORT AND RECOMMENDATION - 16

does not affect the decision about whether you were disabled at the time you were last insured

for disability benefits." *Id.* (citing AR at 2). Thus, plaintiff contends that the Commissioner

erred by failing to include in the transcript the medical evidence submitted to and considered

by the Appeals Council. *Id.*

Plaintiff's arguments do not establish reversible error. Here, the Appeals Council

indicated that it had looked at, but not considered, the additional material dated after the ALJ's

decision. The Appeals Council further indicated that the evidence did not relate to the period

at issue because it was about "a later time." AR at 2. This finding appears consistent with

Social Security regulations providing that the Appeals Council does not consider evidence it

finds does not relate to the period on or before the date of the ALJ's decision:

> In reviewing decisions based on an application for benefits, the Appeals Council
> will consider the evidence in the administrative law judge hearing record and
> any new and material evidence only if it relates to the period on or before the
> date of the administrative law judge hearing decision. If you submit evidence
> which does not relate to the period on or before the date of the administrative
> law judge hearing decision, the Appeals Council will return the additional
> evidence to you with an explanation as to why it did not accept the additional
> evidence and will advise you of your right to file a new application.

20 C.F.R. § 416.1476(b)(1). *See also* 20 C.F.R. § 404.970(b) ("If new and material evidence is

submitted, the Appeals Council shall consider the additional evidence only where it relates to

the period on or before the date of the [ALJ] hearing decision."). In any event, the Appeals

Council's determination that evidence should not be included in the record under this

regulation is not a final decision subject to judicial review.

As the Commissioner argues, however, "Plaintiff cured any possible defect by

attaching the evidence to her brief (ECF Docket Nos. 14-1, 14-2, 14-3, and 14-4)." Dkt. 16 at

18. Furthermore, the Commissioner does not object to this Court's review of the new evidence

submitted to the Appeals Council, but not incorporated into the record. *See id.* at 15-16 ("In

REPORT AND RECOMMENDATION - 17

applying [the *Brewes v. Comm'r of Soc. Sec. Admin.*] standard and considering the record as a whole, the new evidence does not change the fact that substantial evidence supports the ALJ's findings.").  As a result, in an abundance of caution, the Court has reviewed these records as though the Appeals Council had considered them and incorporated them into the record, and determined that the ALJ's decision remains supported by substantial evidence.  *See Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1159-60 (9th Cir. 2012) ("[W]e hold that when the Appeals Council considers new evidence in deciding whether to review a decision of the ALJ, that evidence becomes part of the administrative record, which the district court must consider when reviewing the Commissioner's final decision for substantial evidence."); *Harman v. Apfel,* 211 F.3d 1172, 1180 (9th Cir. 2000) ("We properly may consider the additional materials because the Appeals Council addressed them in the context of denying Appellant's request for review.").

C. The ALJ Did Not Err in Assessing Plaintiff's Credibility

With respect to plaintiff's credibility, the ALJ found that "[i]n the alternative, after careful consideration of the evidence, the claimant's medically determinable impairments could reasonably be expected to have caused some of the alleged symptoms.  However, the undersigned does not find all of the claimant's symptom allegations to be credible for the following reasons[.]"  AR at 22.  Specifically, the ALJ found that (1) the medical evidence contradicted plaintiff's alleged limitations; (2) plaintiff has made inconsistent statements regarding her symptoms and activities of daily living; and (3) plaintiff has had inconsistent treatment for her allegedly disabling impairments.

1. *Standard for Evaluating Credibility*

As noted above, credibility determinations are within the province of the ALJ's responsibilities, and will not be disturbed, unless they are not supported by substantial

evidence.  A determination of whether to accept a claimant's subjective symptom testimony requires a two-step analysis.  20 C.F.R. §§ 404.1529, 416.929; *Smolen*, 80 F.3d at 1281; SSR 96-7p.  First, the ALJ must determine whether there is a medically determinable impairment that reasonably could be expected to cause the claimant's symptoms.  20 C.F.R. §§ 404.1529(b), 416.929(b); *Smolen*, 80 F.3d at 1281-82; SSR 96-7p.  Once a claimant produces medical evidence of an underlying impairment, the ALJ may not discredit the claimant's testimony as to the severity of symptoms solely because they are unsupported by objective medical evidence.  *Bunnell v. Sullivan*, 947 F.2d 341, 343 (9th Cir. 1991) (en banc); *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1988).  Absent affirmative evidence showing that the claimant is malingering, the ALJ must provide "clear and convincing" reasons for rejecting the claimant's testimony.  *Smolen*, 80 F.3d at 1284; *Reddick*, 157 F.3d at 722.  When evaluating a claimant's credibility, the ALJ must specifically identify what testimony is not credible and what evidence undermines the claimant's complaints; general findings are insufficient.  *Smolen*, 80 F.3d at 1284; *Reddick*, 157 F.3d at 722.  The ALJ may consider "ordinary techniques of credibility evaluation" including a reputation for truthfulness, inconsistencies in testimony or between testimony and conduct, daily activities, work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains.  *Smolen*, 80 F.3d at 1284; *see also Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).

### 2.     *Unsupported by Objective Medical Evidence*

The ALJ found that plaintiff's "allegations of disabling limitations are inconsistent with a number of clinical findings.  Physical examination has shown the claimant to be in no acute distress and neurologically intact, with normal gait and posture, normal sensation in the feet, full range of motion in the extremities, 5/5 motor strength universally, negative straight leg

REPORT AND RECOMMENDATION - 19

raise, and intact ability to tandem walk, walk on heels and toes, hop, bend, and squat." AR at 22. For example, "physical examination performed in December of 2011 showed tenderness to palpation over the paraspinal muscles, but otherwise showed cervical and lumbar range of motion within normal limits, and intact light touch sensation throughout the extremities." AR at 22. The ALJ noted that "although the claimant reports that she has pain due to arthritis, the record reflects no imaging to support a diagnosis of osteoarthritis." AR at 22. In addition, the ALJ observed that although "consulting physician Peter Pfieffer MD diagnosed low back and hip pain due to arthritis . . . he gave no clinical findings in support of these diagnoses, and characterized her arthritis as 'very mild,' with no intervention being needed." AR at 22. Similarly, "consulting physician Aaron Bunnell MD noted that the claimant did have decreased range of motion in the bilateral hips 'likely consistent with mild osteoarthritis,' but did not give this as a diagnosis, and noted that there was no imaging available to confirm the diagnosis." AR at 22.

With respect to plaintiff's carpal tunnel syndrome, "examination has shown good manual dexterity with normal thumb-to-finger test bilaterally, and 5/5 grip strength bilaterally." AR at 23. In addition, "[n]eurological examination performed in December of 2011 showed positive Phalen's and Tinel's signs on the right, slight thenar wasting on the right hand, and reduced strength in the abductor pollicis brevis, but was otherwise normal, showing intact sensation in the upper extremities." AR at 23. Regarding plaintiff's mental health, the ALJ noted that plaintiff also performed well on mental status exam and consulting psychiatrist Anselm Parlatore MD commented that "it was my definite clinical impression that there were no cognitive deficits. She had a wonderfully intact memory and was able to abstract logic concepts and [has an] excellent fund of information." AR at 23.

Plaintiff contends that the ALJ impermissibly relied on a lack of objective medical evidence to reject plaintiff's pain testimony related to her osteoarthritis. Dkt. 14 at 21. The Commissioner responds that although subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain in its disabling effects. Dkt. 16 at 8. The Commissioner also points out that "Plaintiff does not address the majority of the ALJ's findings regarding her alleged mental limitations, and the Court should find that these findings constitute substantial evidence to discredit the Plaintiff's alleged limitations." *Id.*

As noted above, it is the duty of the ALJ in the first instance to resolve credibility issues, and the ALJ's assessment will not be disturbed unless it is not supported by substantial evidence. Here, the ALJ provided several clear and convincing reasons for finding plaintiff less than credible, and this assessment is supported by substantial evidence in the record.

As argued by the Commissioner, the ALJ did not err by rejecting plaintiff's testimony based, in part, upon the fact that it was unsupported by objective medical evidence. The Ninth Circuit has asserted that although "subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of a claimant's pain and its disabling effects." *Rollins v. Massanari,* 261 F.3d 853, 857 (9th Cir. 2001); *see also Burch*, 400 F.3d at 681 ("Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis."); SSR 96–7, *2–3 (the ALJ "must consider the entire case record, including the objective medical evidence" in determining credibility, but statements "may not be disregarded solely because they are not substantiated by objective medical evidence"). Thus, inconsistency between plaintiff's

REPORT AND RECOMMENDATION - 21

allegations and the objective medical evidence was one relevant factor for the ALJ to consider, among others, in determining plaintiff's credibility.

### 3.      *Inconsistent Statements Regarding Symptoms*

The ALJ also found that plaintiff's "report regarding her symptoms has been inconsistent." AR at 23. Specifically, the ALJ explained that plaintiff reported experiencing symptoms "long before the alleged onset date, but earnings documentation shows that she worked at substantial gainful activity levels in spite of them. The record reflects no objective evidence to support a finding that these impairments worsened as of the alleged onset date." AR at 23. In addition, the ALJ noted that in January 2011, plaintiff reported low back pain that began after she strained her back at work in 1996. AR at 279. One month later, plaintiff reported that she also had a head injury at work and reported experiencing "fireworks" in her brain every night since the workplace incident. AR at 282. The ALJ noted that plaintiff had worked as a cosmetologist and hair stylist for 20 years, including several years after these reported workplace injuries. AR at 282. The ALJ noted that "in December of 2011, she reported that she had been diagnosed with obsessive compulsive disorder, yet did not report any repetitive behaviors or compulsive behaviors. The medical record does not reflect this diagnosis." AR at 23. In January 2011, plaintiff described symptoms of post-traumatic stress disorder ("PTSD") after being left in a Swiss hospital when she was only six years old, AR at 283, but never described this incident in 2010 when she attributed her alleged PTSD symptoms to fleeing from Iran when the Shah was in power. AR at 23, 271.

Finally, the ALJ noted that in December 2011, plaintiff was examined in the emergency room for a headache that felt like a truck was hitting her head, commenting that she had never felt these symptoms before, despite having alleged daily "fireworks" in her head previously. Later, plaintiff reported that she felt this was a mini-stroke, AR at 419, on another

occasion reported she had a basilar artery aneurysm, AR at 421.  However, the ALJ noted that plaintiff's neurological examination and CT scan were normal, reflecting no aneurysm.  AR at 411.

Plaintiff contends that the ALJ incorrectly found her not credible in part because she alleged disabling workplace injuries in 1996, but continued to work for many years after these injuries.  Dkt. 14 at 22 (citing AR at 22-26).  Plaintiff points to her testimony that her problems began to worsen in early 2000, and it was not until 2005 to 2006 that they progressed to the point that she could no longer tolerate working with her pain.  *Id.* (citing AR at 42).  The Commissioner argues that plaintiff's inconsistent statements throughout the record were a clear and convincing reason for the ALJ to discount plaintiff's credibility.  Dkt. 16 at 5-7.

The Court agrees with the Commissioner.  The ALJ identified several inconsistent statements made by the plaintiff regarding the nature, extent, and onset of her symptoms, and these inconsistencies constitute a clear and convincing reason to discount plaintiff's credibility.  For example, plaintiff reported PTSD symptoms stemming from a traumatic childhood sickness on one occasion, but entirely failed to mention it when describing her PTSD symptoms on other occasions.  Plaintiff has also claimed to have been diagnosed with OCD and a brain aneurysm, when these diagnoses do not appear anywhere in the medical record.  An ALJ may rely on "ordinary techniques of credibility evaluation."  *See Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008).  The plaintiff's inconsistent statements are clear and convincing reasons to discount plaintiff's credibility.

4.   *Daily Activities that are Inconsistent with her Alleged Symptoms*

The ALJ also found that plaintiff's "report regarding her daily activities has been highly inconsistent.  At times she has described daily activities that are at odds with the allegations of disabling limitations."  AR at 24.  For example, in plaintiff's "application

1    materials, she reported that she is unable to go grocery shopping, or be outside her home for

2    too long.  She reports that she has difficulty walking to the mailbox, and is not able to perform

3    household tasks such as dishes and lifting the laundry basket due to pain."  AR at 24.

4    "However, in her function report, she indicated that she has no problems with personal care,

5    takes care of her husband and daughter, drives, and can pay bills and count change." AR at 24.

6    In April and July 2010, she reported that she was going to school on a Pell Grant and studying

7    computer science.  AR at 24.

8         The ALJ noted that plaintiff's reports of her daily activities during her consultative

9    examinations were also at odds.  Specifically, "upon consultative physical examination in

10   February of 2011, the claimant reported that on a typical day, she wakes up, cleans the house,

11   dresses herself, makes coffee, does laundry, uses the computer, and watches TV."  AR at 24.

12   By contrast, in March 2011 "she told consulting psychiatrist Anselm Parlatore MD that she

13   cannot do very much around the house, and her husband and children help her with the

14   cooking, cleaning, shopping, ironing, and laundry."  AR at 24.  Finally, "at the hearing the

15   claimant testified that her husband is disabled, and so she does all of the household chores,

16   cooking, and cleaning.  This is inconsistent with her testimony that she cannot lift or handle

17   objects."  AR at 20.

18        Plaintiff argues that "the ALJ also found Plaintiff incredible due to supposed

19   inconsistent daily activities . . . which belied her testimony of severe physical or mental

20   limitations, but he failed to actually identify any activities that Plaintiff performed for a

21   sustained period of time in contravention to her testimony."  Dkt. 14 at 22.  The Commissioner

22   responds that "normal daily activities tend to show that a claimant can still work."  Dkt. 16 at 7

23   (citing *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1175 (9th Cir. 2008) (citing with approval

24   the ALJ's finding that "normal activities of daily living, including cooking, house cleaning,

doing laundry, and helping her husband in managing finances . . . tend to suggest that the claimant may still be capable of performing the basic demands of competitive, remunerative, unskilled work on a sustained basis."). The Commissioner asserts that the ALJ reasonably discounted plaintiff's credibility because she engaged in many activities that belied her alleged limitations. *Id.*

Activities that are engaged in by a claimant that are inconsistent with a claimed level of impairment are a proper basis upon which to formulate an adverse credibility determination. 20 C.F.R. § 404.1529(c)(i). *See Molina v. Astrue,* 674 F.3d 1104, 1112–13 (9th Cir. 2012). The ALJ may discredit a claimant's testimony when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting, and may also consider how a claimant's activities of daily living contradict his allegations of total disability. *Molina*, 674 F.3d at 1113. Here, the ALJ did not err by concluding that plaintiff has made inconsistent reports regarding her daily activities. Furthermore, plaintiff's testimony at the hearing that her husband is disabled and therefore she does all of the household chores, cooking, and cleaning for her family appears inconsistent with her claims of total disability. *See Stubbs-Danielson*, 539 F.3d at 1175; *Light v. Comm'r of Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997) (holding that an ALJ appropriately considers inconsistencies between a claimant's testimony and his or her conduct when evaluating credibility). Thus, these inconsistencies were a clear and convincing reason for finding plaintiff less than credible.

5.    *Inconsistent Treatment*

Finally, the ALJ discounted plaintiff's credibility because she has received inconsistent treatment for her conditions. AR at 24. Specifically, the ALJ notes that plaintiff alleges that she has been disabled since 2006, but the record reflects no treatment for most of the alleged symptoms until 2010, which is after the date last insured. AR at 24. In addition, "despite

allegations of quite limiting pain, her treatment for pain has been routine, conservative, and

intermittent . . . Despite allegations of disabling mental symptoms, the record reflects little

mental health treatment aside from prescriptions from fluoxetine and prazosin." AR at 24.  In

November 2011, plaintiff "reported that fluoxetine was substantially effective, even though she

had some joint pain that might also be attributed to arthritis."  AR at 24.

The ALJ could reasonably conclude that there was sparse treatment evidence in the

record relating to the relevant period of time in this case, i.e., the period prior to plaintiff's date

last insured, for a claimant alleging such significant physical and mental problems.  *See*

*Tommasetti*, 533 F.3d at 1039 (holding that an ALJ may discount a claimant's credibility based

upon an "unexplained or inadequately explained failure to seek treatment"); SSR 96-7p

(providing that a claimant's "statements may be less credible if the level or frequency of

treatment is inconsistent with the level of complaints[.]").   As the Ninth Circuit noted in *Parra*

*v. Astrue*, "we have previously indicated that evidence of 'conservative treatment' is sufficient

to discount a claimant's testimony regarding severity of an impairment."  481 F.3d 742, 750-51

(9th Cir. 2007) (citing *Johnson v. Shalala*, 60. F3d 1428, 1434 (9th Cir. 1995)).  The ALJ also

properly acknowledged throughout his decision that plaintiff reported that she did not have

medical insurance for much of the period at issue, which may have helped to explain some of

the gaps in treatment.  Nevertheless, plaintiff's failure to consistently seek treatment prior to

her date last insured was a clear and convincing reason for the ALJ to consider, among several

others, for discounting plaintiff's credibility.   Accordingly, the ALJ provided several clear and

convincing reasons for finding plaintiff less than credible, and these reasons are supported by

substantial evidence in the record.

The role of this Court is limited.  As noted above, the ALJ is responsible for

determining credibility, resolving conflicts in medical testimony, and resolving any other

1    ambiguities that might exist.  *Andrews*, 53 F.3d at 1039.  When the evidence is susceptible to

2    more than one rational interpretation, it is the Commissioner's conclusion that must be upheld.

3    *Thomas,* 278 F.3d at 954.  While it may be possible to evaluate the evidence as plaintiff

4    suggests, it is not possible to conclude that plaintiff's interpretation is the only rational

5    interpretation.

6                              VIII.   CONCLUSION

7          For the foregoing reasons, the Court recommends that this case be AFFIRMED.  A

8    proposed order accompanies this Report and Recommendation.

9          DATED this 23rd day of October, 2013.

10

11   _____
     JAMES P. DONOHUE
12   United States Magistrate Judge

13

14

15

16

17

18

19

20

21

22

23

24

REPORT AND RECOMMENDATION - 27